1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUSSELL S. GRANT,<br><br>                Plaintiff,<br><br>     v.<br><br>SGT. BORGES, et al.,<br><br>             Defendants. | Case No. EDCV 21-0899 VBF (PVC)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE  [Dkt. No. 51]** |

This Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

On June 24, 2020, Russell S. Grant, a California state prisoner proceeding *pro se*, constructively filed a civil rights complaint pursuant to 42 U.S.C. § 1983 in the Eastern District of California.  ("Complaint," Dkt. No. 1).[1]  The sprawling Complaint alleged

---

[1]  The Court will cite to Plaintiff's pleadings, including attachments, as though they were consecutively paginated using the CM/ECF-generated page numbers.

claims against a large number of CDCR employees at three institutions for a number of different, unrelated wrongs.  Concurrently with the Complaint, Plaintiff filed a motion for a preliminary injunction and a temporary restraining order.  (Dkt. No. 3).

On July 7, 2020, the Magistrate Judge in the Eastern District recommended that the motion for a preliminary injunction and temporary restraining order be denied, that the claims in the Complaint be severed based on the location of the institution where each Defendant was employed, and that the claims against employees of the California Institution for Men ("CIM") and the California Rehabilitation Center ("CRC") be transferred to the Central District of California.  (Dkt. No. 13).  On September 2, 2020, the District Judge adopted the Magistrate Judge's findings and recommendations and directed the Court Clerk to transmit the severed claims to this Court.  (Dkt. No. 14).  However, for reasons that are unclear, transfer was delayed by nearly nine months and it was not until May 25, 2021 that Plaintiff's CIM/CRC claims were received by the Central District of California.  (Dkt. No. 29).

Upon receipt of those claims, this Court dismissed the Complaint with leave to amend due to its several pleading deficiencies.  (Dkt. No. 33).  Plaintiff filed the operative First Amended Complaint on January 10, 2022.  ("FAC," Dkt. No. 36).  On March 2, 2022, the Court ordered service of the FAC on the three named Defendants.  (Dkt. No. 39).  However, of the three named Defendants, service was able to be effectuated on only one, CIM Captain L. Parker.  (*See* Dkt. Nos. 45-47).  On August 11, 2022, Parker filed the instant Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ("MTD," Dkt. No. 51).

Plaintiff requested an extension of time to file an opposition to the MTD on September 16, 2022, (Dkt. No. 54), which the Court granted.  (Dkt. No. 56).  Pursuant to the extension, the deadline for filing either an opposition or a notice of non-opposition to

the MTD was continued to October 20, 2022.  (Dkt. No. 56).  That deadline has lapsed, and no response from Plaintiff has been received.

Pursuant to Local Rule 7-12, the failure to file a required document by the Court's deadline "may be deemed consent to the granting or denial of the motion, with the exception that a motion pursuant to F.R.Civ.P. 56 may not be granted solely based on the failure to file an opposition."  C.D. Cal. L.R. 7-12.  Because Parker has not filed a motion for summary judgment under Rule 56, but rather a motion to dismiss under Rule 12(b)(6), Plaintiff's failure to file an opposition may be deemed consent to the granting of the MTD.  This is a sufficient and independent reason to dismiss the FAC as requested by Defendant.  However, even without consideration of this procedural ground for dismissal, the FAC fails to state a claim against Parker -- or the other Defendants -- on the merits.  Accordingly, it is recommended that: (1) the MTD be granted; (2) the FAC be dismissed for failure to state a claim pursuant to Rule 12(b)(6); and (3) Plaintiff be granted thirty days to file a Second Amended Complaint.

## II.

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The FAC sues one unknown and three named employees of the California Institution for Men:[2]  (1) Correctional Officer John Doe No. 1, (2) Sgt. Borges, (3) Medical Clinician Jacobsson, and (4) Captain L. Parker.  (FAC at 7-8).  All Defendants are sued in their individual capacities only.  (*Id.*).

Plaintiff alleges that on the morning of October 24, 2019, he was housed in CIM's Administrative Segregation ("Ad Seg") unit.  (*Id.* at 9).  Correctional Officer John Doe

---

[2] The FAC abandons the claims alleged in the original Complaint against the CMC Defendants.

1   No. 1 served Plaintiff a breakfast tray.  (*Id*.).  The food put Plaintiff's health and safety at

2   "extreme risk" as it was spiked or tampered with "some sort of substance" that caused

3   Plaintiff to experience a burning sensation throughout his body.  (*Id*.).  When John Doe

4   No. 1 returned to pick up the tray, Plaintiff verbally complained, but to no avail.  (*Id*.).

5   Plaintiff summarily asserts that John Doe No. 1 deprived him of "sanitary food and a well-

6   balanced meal for over 3 days."  (*Id*.).

7

8          Plaintiff asked for a grievance form from multiple guards so he could file an

9   administrative complaint about the deprivation, but was told that none would be available

10  for several days.  (*Id*.).  On October 27, 2019,[3] Sergeant Borges was doing a walk

11  throughout Ad Seg on second watch and asked Plaintiff how he was doing.  (*Id*. at 9-10).

12  Plaintiff told him that he had not eaten in three days because correctional officers did

13  something to his food tray.  (*Id*. at 10).  Borges asked if there was anything else that he

14  could help Plaintiff with, and Plaintiff responded by asking, "So your [sic] not gonna fix

15  the problem?  I didn't have any problems here (prison) until I sent out those letters."  (*Id*.)

16  (parenthetical in original).  Borges then stated, "You should have though[t] about that

17  before you sent the letters out," and walked away.  (*Id*.).

18

19         Borges was the supervisor of the "subordinate defendant" who denied Plaintiff

20  consecutive hot sanitary meals.  (*Id*.).  Plaintiff maintains that he explained to Borges on

21  October 27, 2019 that he had not eaten for three days, but Borges "failed and refused to

22  correct or investigate the illegal conduct by his subordinate."  (*Id*.).  As such, Borges also

23  deprived Plaintiff of sanitary, healthy, well-balanced and adequate meals for over three

24  days.  (*Id*.).

25

26

27  _____
    [3] The date in the first mention of the incident with Borges on page 9 of the FAC is
    difficult to read.  However, in the summary of the claim against Borges on page 10,
28  Plaintiff clearly alleges that the encounter took place on October 27, 2019, three days after
    John Doe No. 1 served a tray with "tampered" food.

On October 31, 2019, Plaintiff went before a classification committee consisting of Borges, Clinician Jacobsson, and Captain Parker.  (*Id*.).  Plaintiff told them that he had been deprived of sanitary, consecutive hot meals and requested a transfer to another prison.  (*Id*.).  Jacobsson cut in and asked Plaintiff whether he thought he might be hallucinating that John Doe No. 1 did something to his food.  Plaintiff replied in the negative, stating that he knew what he felt when his skin was burning.  (*Id*.).  Jacobsson then suggested that Plaintiff go to "triple C, M and S" ("CCCMS")[4] where he could have nice accommodations in a cool cell and watch TV.  (*Id*.).  Plaintiff said that he would not go into a mental health program, and once again demanded a transfer.  (*Id*.).  At that point, Parker saw the tension between Plaintiff and Jacobsson and said, "we'll give you a transfer, where would you like to go?"  (*Id*. at 11).  Plaintiff stated, "anywhere is fine but here."  (*Id*.).

Plaintiff states that at the classification meeting on October 31, 2019, Jacobsson "failed and refused to correct or investigate the illegal conduct," and as such, deprived Plaintiff of sanitary, healthy, well-balanced and adequate meals for over three days.  (*Id*.).  Similarly, Parker, as a supervisor, knew that a subordinate had deprived Plaintiff of "consecutive hot meals," and even though Plaintiff explained to Parker that he had not eaten for three days, Parker "failed and refused to correct or investigate the illegal conduct by his subordinate."  (*Id*.).  As such, Parker also deprived Plaintiff of sanitary, healthy, well-balanced and adequate meals for over three days.  (*Id*.).

Plaintiff asserts that John Doe No. 1, Borges, Jacobsson and Parker violated his Eighth Amendment right to be free from cruel and unusual punishment by depriving him of "sanitary food and a well-balanced meal for over 3 days," with deliberate indifference

---

[4] "CCCMS" stands for Correctional Clinical Case Management Services. *Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 903 (E.D. Cal. 2009).  "The CCCMS level of care is for inmates whose [mental disorder] symptoms are under control or in partial remission and can function in the general prison population, administrative segregation, or segregated housing units."  *Id*. at 903 n.24.

1   to his basic human needs.  (*Id*. at 11-12).  Plaintiff seeks compensatory damages of

2   $30,000 and punitive damages of $90,000 from each Defendant and a declaration that his

3   constitutional rights were violated.  (*Id*. at 13).

4

5                                      **III.**

6                        **MOTION TO DISMISS STANDARD**

7

8            Dismissal under Rule 12(b)(6) for failure to state a claim is warranted if the

9   plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."

10  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

11  when the plaintiff pleads factual content that allows the court to draw the reasonable

12  inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556

13  U.S. 662, 678 (2009).  While a complaint "does not need detailed factual allegations," to

14  survive review under Rule 12(b)(6), a showing of an entitlement to relief "requires more

15  than labels and conclusions, and a formulaic recitation of the elements of a cause of action

16  will not do."  *Twombly*, 550 U.S. at 555.  Where there are two possible explanations for a

17  defendant's behavior, only one of which can be true, allegations that are "merely

18  consistent" with a plaintiff's favored explanation but that "are also consistent with [an

19  innocuous] alternative explanation" fail to state a claim.  *Eclectic Properties E., LLC v.*

20  *Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014); *see also Iqbal*, 556 U.S. at

21  678 ("Where a complaint pleads facts that are merely consistent with a defendant's

22  liability, it stops short of the line between possibility and plausibility of entitlement to

23  relief."); *Sypherd v. Lazy Dog Restaurants, LLC*, 2020 WL 5846481, at *4 (C.D. Cal. July

24  24, 2020) ("[W]here a plaintiff's factual allegations equally support both a liability-

25  creating scenario and a no-liability scenario, plaintiff has failed to state a claim.").  Rather,

26  "[s]omething more is needed, such as facts tending to exclude the possibility that the

27  alternative explanation is true, in order to render plaintiffs' allegations plausible within the

28  meaning of *Iqbal* and *Twombly*."  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104,

1    1108 (9th Cir. 2013) (internal citation omitted).

2

3       *Pro se* pleadings are "held to less stringent standards" than those drafted by a

4    lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). However, even though

5    the court must interpret a *pro se* complaint liberally and construe all material allegations

6    of fact in the light most favorable to the plaintiff, *see Hebbe v. Pliler*, 627 F.3d 338, 342

7    (9th Cir. 2010), the court does not have to accept as true mere legal conclusions. *See*

8    *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

9    supported by mere conclusory statements, do not suffice."). Furthermore, in giving liberal

10    interpretation to a *pro se* complaint, the court may not supply essential elements of a claim

11    that were not initially pled. *Pena v. Gardner*, 976 F.2d 469, 471-72 (9th Cir. 1992).

12

13       As a general matter, even when a request to amend a defective complaint is not

14    made, "[l]eave to amend should be granted unless the pleading could not possibly be

15    cured by the allegation of other facts, and should be granted more liberally to *pro se*

16    plaintiffs." *Lira v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005) (internal quotation

17    marks omitted). However, "[u]nder Ninth Circuit case law, district courts are only

18    required to grant leave to amend if a complaint can possibly be saved. Courts are not

19    required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203

20    F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also Mirmehdi v. United States*, 689 F.3d

21    975, 985 (9th Cir. 2012) ("[A] party is not entitled to an opportunity to amend his

22    complaint if any potential amendment would be futile …."); *Lipton v. Pathogenesis Corp.*,

23    284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was

24    no need to prolong the litigation by permitting further amendment."). The Court's

25    "discretion to deny leave to amend is particularly broad where plaintiff has previously

26    amended the complaint." *United States ex rel. Cafasso v. General Dynamics C4 Systems,*

27    *Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotation marks omitted); *accord*

28    *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014);

1  *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999).

2

3                                                IV.

4                                         DISCUSSION

5

6        A.        <u>Scope Of The Eighth Amendment</u>

7

8        Infliction of suffering on prisoners that is "totally without penological justification"

9  violates the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  "[T]he

10  unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment

11  forbidden by the Eighth Amendment."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986)

12  (internal quotation marks and citation omitted).  The punishment must constitute

13  "shocking and barbarous treatment."  *Grummett v. Rushen*, 779 F.2d 491, 494 n.1 (9th

14  Cir. 1985).

15

16        Two showings are required to state a claim under the Eighth Amendment.  A

17  prisoner must first make "an 'objective' showing that the deprivation was 'sufficiently

18  serious' to form the basis for an Eighth Amendment violation," *Johnson v. Lewis*, 217

19  F.3d 726, 731 (9th Cir. 2000), *i.e.*, that he was denied "the minimal civilized measure of

20  life's necessities" such as adequate food, clothing, shelter, or medical care, or reasonable

21  measures to ensure personal safety.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)

22  (internal quotation marks omitted).  "[E]xtreme deprivations are required to make out a

23  conditions-of-confinement claim.  Because routine discomfort is 'part of the penalty that

24  criminal offenders pay for their offenses against society,' 'only those deprivations denying

25  the minimal civilized measure of life's necessities are sufficiently grave to form the basis

26  of an Eighth Amendment violation.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)

27  (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and *Wilson v. Seiter*, 501 U.S.

28  294, 298 (1991) (internal quotations and citations omitted)).  By the same measure, "[a]n

8

1   institution's obligation under the Eighth Amendment is at an end if it furnishes sentenced

2   prisoners with adequate food, clothing, shelter, sanitation, medical care and personal

3   safety." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

4

5        With respect to the kind of food a prisoner must be provided consistent with the

6   Eighth Amendment's minimum requirements, the Ninth Circuit explains:

7

8        The Eighth Amendment requires only that prisoners receive food that is

9        adequate to maintain health; it need not be tasty or aesthetically pleasing.

10       *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977).  "The fact that

11       the food occasionally contains foreign objects or sometimes is served cold,

12       while unpleasant, does not amount to a constitutional deprivation." *Hamm*

13       *v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985), cert. denied, 475

14       U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986).  In *Hutto v. Finney*,

15       437 U.S. 678, 686-87, 98 S. Ct. 2565, 2571-72, 57 L. Ed. 2d 522 (1978),

16       the Supreme Court observed that serving inmates a tasteless food

17       concoction called "grue," which provided only 1000 calories a day, might

18       be unconstitutional if served for long periods.

19

20  *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (footnote omitted).  It is well

21  settled that the Eighth Amendment does not guarantee a prisoner the "right to meals of his

22  choice." *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1267 (W.D. Wash.

23  2013), aff'd, 639 F. App'x 484 (9th Cir. 2016) (citing *LeMaire*, 12 F.3d at 1456).  Nor

24  does a prisoner have a constitutional right to be served a hot meal.  *Garnica*, 965 F. Supp.

25  2d at 1267 (citing *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977)).

26  Nonetheless, the repeated deprivation of meals may be sufficient to state a constitutional

27  claim.  *See Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (allegation that prisoner

28  was denied 16 meals in 23 days stated a "sufficiently serious deprivation" to satisfy the

9

objective prong of an Eighth Amendment claim).  Furthermore, "[f]ood that is spoiled and water that is foul would be inadequate to maintain health," and therefore could violate the Eighth Amendment if proven.  *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998).

In addition to an objective showing of a sufficiently serious deprivation, the prisoner must make "a 'subjective' showing that the prison official acted 'with a sufficiently culpable state of mind,'" *Johnson*, 217 F.3d at 731, *i.e.*, that the official knew of and consciously disregarded an excessive risk to the inmate's health or safety.  *Farmer*, 511 U.S. at 837.  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."  *Whitley*, 475 U.S. at 319.  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ."  *Wilson v. Seiter*, 501 U.S. 294, 299 (1991) (internal quotation marks and citation omitted).

### B.    The FAC Fails To State An Eighth Amendment Claim[5]

Plaintiff's factual allegations fall into two categories:  (1) the delivery of a breakfast food tray on October 24, 2019 by John Doe No. 1 with an allegedly "spiked" meal, which Plaintiff claims deprived him of food for three days, and (2) the failure of the other Defendants to take after-the-fact action when Plaintiff told them about the three-day deprivation on October 27, 2019 (Borges) and October 31, 2019 (Jacobsson and Parker).  Although Plaintiff does not allege that the food deprivation continued after he told Borges,

---

[5] As the only Defendant who was served and has appeared, Parker brought the MTD on his behalf only.  However, the same substantive deficiencies that are fatal to the Eighth Amendment claim against Parker are equally fatal to the Eighth Amendment claims against the remaining Defendants.  Accordingly, while this Report and Recommendation specifically concerns the claims against Parker, its findings apply equally as well to the claims against all named Defendants.

Jacobsson and Parker about his three-day ordeal, Plaintiff maintains that these three Defendants are also liable for the deprivation because they (1) did not "correct and investigate" the illegal conduct, (2) suggested that Plaintiff might have hallucinated the incident, and (3) did not transfer Plaintiff to another prison.  None of these allegations states an Eighth Amendment claim.

The FAC fails to state an Eighth Amendment claim against Correctional Officer John Doe No. 1.  Plaintiff claims that on October 24, 2019, John Doe No. 1 served him a breakfast that caused him to experience a burning sensation throughout his body.  (*Id*. at 9).  Plaintiff believes that the food was "tampered or spiked" with "some sort of substance."  (*Id*. at 9).  When John Doe No. 1 came to retrieve the breakfast tray, Plaintiff complained, but John Doe No. 1 did not respond.  (*Id*.).  Plaintiff alleges that John Doe No. 1 deprived him of food for three days, i.e., on October 24, 25 and 26, but does not explain how or why.  Plaintiff does not explain whether he believes that John Doe No. 1 personally tampered with his October 24 breakfast tray or merely delivered it; Plaintiff does not even describe what the breakfast was.  It is also unclear whether John Doe No. 1 continued to serve Plaintiff tampered food at each meal for three days, or if Plaintiff simply refused to eat the food brought to him for that period.  If there was more than one tainted meal, Plaintiff does not explain how he knew the food was tampered with if he did not eat it.  Plaintiff also does not explain why he believes that the burning he felt following his breakfast on October 24 was because the food was intentionally tampered with and not because the food carried an unknown, but natural, pathogen, or because he had an allergic reaction to an ingredient in the food, or even because he was experiencing the onset of an illness entirely unrelated to his meal, all of which would provide equally plausible -- and innocuous -- alternative explanations for his adverse reaction.  Finally, it is unclear why Plaintiff felt it was safe to resume eating after three days.  Plaintiff's bare bones, conclusory allegations against John Doe No. 1, which fail to provide sufficient facts that would exclude the possibility of innocent alternative explanations, fall "short of

1    the line between possibility and plausibility of entitlement to relief" and thereby fail to

2    state a claim.  *Iqbal*, 556 U.S. at 678.

3

4          Plaintiff also does not state an Eighth Amendment claim for this purported three-

5    day deprivation of food against Sgt. Borges.  Plaintiff alleges that on October 27, 2019,

6    *i.e.*, presumably once Plaintiff had resumed eating, Borges came by Plaintiff's cell and

7    asked him how he was doing.  (*Id*. at 9-10).  Plaintiff told Borges that he had not eaten in

8    three days because John Doe No. 1 had "done something to [his] food tray." (*Id*. at 10).

9    Borges then asked, "Is there anything else I can help you with?," to which Plaintiff

10   replied, "So your [sic] not gonna fix the problem?" (*Id*.)  Plaintiff contends that as a result

11   of this exchange on October 27, Borges had actual knowledge that he had not had

12   "sanitary food of consecutive hot meals" for three days but "failed and refused to correct

13   or investigate the illegal conduct," and by so doing deprived him of "sanitary food and a

14   well-balanced meal for over 3 days . . . ." (*Id*.).  However, he does not allege that Borges

15   had any involvement in the alleged deprivation that occurred between October 24 and 26,

16   or even learned of it until after Plaintiff had resumed eating.  Borges's after-the-fact

17   knowledge of the harm purportedly committed by John Doe No. 1 cannot logically be the

18   *cause* of Plaintiff being deprived of food.

19

20         Additionally, Plaintiff does not appear to state any other constitutional claim

21   against Borges for the purported failure to "correct" or investigate a deprivation that was

22   no longer ongoing by the time Borges allegedly learned of it.  The First Amendment

23   provides that Congress shall make no law abridging the right of the people "to petition the

24   Government for redress of grievances."  The right to petition the government is "cut from

25   the same cloth" as the other guarantees in the First Amendment and is "an assurance of a

26   particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985).

27   However, the Petition Clause guarantees only that an individual may "speak freely and

28   petition openly" and that he will be free from retaliation by the government for doing so.

12

1   *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 464-65 (1979)

2   (per curiam).  The First Amendment does not guarantee that there will be any government

3   response to a petition or that the government will take any action regarding the relief

4   demanded by the petitioner.  Plaintiff did not have a constitutional right to an

5   investigation following his complaint, much less a right to have John Doe No. 1 punished.

6

7        The Eighth Amendment claims against Jacobsson and Parker fail for the same

8   reasons.  Plaintiff alleges that on October 31, 2019 -- approximately five days after the

9   alleged deprivation ceased and Plaintiff had presumably resumed eating -- he attended a

10  classification meeting at which Jacobsson, Parker and Borges were present.  (*Id*. at 10).

11  When Plaintiff complained that he had been deprived of sanitary food for three days,

12  Jacobsson asked whether Plaintiff might have been hallucinating that something was done

13  to his food and suggested that Plaintiff could go to a mental health program.  (*Id*.).  The

14  only factual allegation involving Parker in connection with this meeting is that after

15  learning of Plaintiff's complaint, he promised to give Plaintiff a transfer to another prison,

16  but evidently failed to follow through.  (*Id*. at 11).  Plaintiff nonetheless claims that both

17  Jacobsson and Parker "refused to correct or investigate the illegal conduct" and thereby

18  "deprived Plaintiff [of] sanitary food and well-balanced meal for over three days . . . ."

19  However, similar to the claims against Borges, Plaintiff does not allege that Jacobsson or

20  Parker had any personal involvement in the spiking of his food and does not explain how

21  their after-the-fact knowledge of the alleged deprivation could have been the *cause* of it.

22  Furthermore, as explained above, Plaintiff did not have a First Amendment constitutional

23  right to an investigation of the alleged wrongdoing.

24

25        Plaintiff cannot allege any other harm arose from Jacobsson's suggestion that he go

26  to CCCMS for mental health treatment.  The mere observation that a person might benefit

27  from mental health care does not violate the Constitution, and regardless, Plaintiff can

28  show no prejudice because he evidently did not follow the suggestion and suffered no

1   consequences.  Parker's purported failure to transfer Plaintiff to another institution

2   similarly did not give rise to a constitutional violation because it is well settled that

3   routine housing decisions do not trigger protections under the due process clause.  *See*

4   *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) ("An inmate's liberty interests are

5   sufficiently extinguished by his conviction so that the state may change his place of

6   confinement even though the degree of confinement may be different and prison life may

7   be more disagreeable in one institution than in another."); *Olim v. Wakinekona*, 461 U.S.

8   238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be

9   incarcerated in any particular prison within a State, he has no justifiable expectation that

10   he will be incarcerated in any particular State."); *Miller v. Kernan*, 2017 WL 590259, at

11   *5 (E.D. Cal. Feb. 14, 2017) ("[I]t is well-established that inmates do not have a

12   constitutional right to be incarcerated at a particular correctional facility or in a particular

13   cell or unit within a facility.").  Plaintiff simply had no constitutional entitlement to a

14   transfer.

15

16       On the facts alleged, Plaintiff fails to state an Eighth Amendment claims against

17   *any* of the Defendants.  The ambiguous and conclusory allegations against John Doe No. 1

18   fail to allege facts that would exclude an innocent explanation for Plaintiff's adverse

19   reaction to his October 24 breakfast.  Defendants' collective failure to "correct and

20   investigate" the "illegal conduct" after the fact does not state a claim under the Eighth

21   Amendment, and it is not readily apparent that any other of Plaintiff's constitutional rights

22   were violated.  While Parker is the only Defendant served to date and the MTD is brought

23   solely on his behalf, it is clear that Plaintiff has failed to state a claim against any

24   Defendant with respect to the incident at issue.  As such, it is recommended that Parker's

25   MTD be granted, particularly in light of Plaintiff's failure to oppose the motion.  Although

26   the Court is skeptical that Plaintiff will be able to allege facts sufficient to state an Eighth

27   Amendment claim against any Defendant and against Parker in particular, it is nonetheless

28   recommended that Plaintiff be given one final opportunity to amend his claims and that he

1    be ordered to file a Second Amended Complaint within thirty days of the District Judge's

2    order.

3

4    **C.**    **Notice To Plaintiff Re The Failure To Serve The Remaining Defendants**

5

6         As noted above, of the three named Defendants, only Parker has been served and

7    appeared, and John Doe No. 1 still has not been identified or served.  The Court hereby

8    notifies Plaintiff that even if he files a Second Amended Complaint that successfully

9    states a claim, his failure to provide sufficient information to the United States Marshals

10   Service ("USMS") to enable it to identify and effect service on Borges, Jacobsson and

11   John Doe No. 1 may subject his claims against these Defendants to dismissal.

12

13        On March 16, 2022, the USMS docketed the Process Receipt and Return (USM-

14   285) forms documenting the its attempt to serve Borges and Jacobsson.  (Dkt. Nos. 46-

15   47).  The FAC could not be served on Borges because he is no longer employed by the

16   CDCR and the CDCR did not have authorization on file to accept service on his behalf.

17   (Dkt. No. 47).  The FAC could not be served on Jacobsson because the CDCR could not

18   determine who Jacobsson was with the information provided.  (Dkt. No. 46).  Copies of

19   the docketed Process Receipt and Return forms were mailed to Plaintiff at his address of

20   record, which provided notice to Plaintiff that these two Defendants had not been served.

21

22        Because Plaintiff is proceeding IFP, he is entitled to rely on the USMS for service

23   of process, so long as he provides the necessary information to identify the defendant and

24   help effectuate service.  28 U.S.C. § 1915(d); *Puett v. Blandford*, 912 F.2d 270, 273 (9th

25   Cir. 1990) ("[A] party proceeding in forma pauperis is entitled to have the summons and

26   complaint served by the U.S. Marshal.").  However, where a plaintiff fails to provide the

27   necessary information to help effectuate service, dismissal may be appropriate.  *Pierce v.*

28   *Woodford*, 416 Fed. Appx. 660, 661 (9th Cir. 2011); *see also Downing v. Gentry*, 2018

WL 5266843 (D. Nev. Oct. 23, 2018) (plaintiff has the responsibility to provide the U.S. Marshal with the information necessary to identify and locate each defendant to be served).  If the USMS "is unable to effectuate service . . . because plaintiff failed to provide sufficient information or because a defendant is not where plaintiff claims, and plaintiff is informed of the deficiency, he must seek to remedy the situation or face dismissal of that defendant pursuant to Rule 4(m)," which sets a 90-day deadline for service of a summons and complaint, following which a pleading must be dismissed, absent a showing of good cause.  *Williams v. Clark*, 2016 WL 1445586, at *4 (D. Nev. Mar. 3, 2016); Fed. R. Civ. P. 4(m).  Rule 4(m)'s 90-day service deadline applies to named and unnamed Defendants alike.  *See Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1158 (C.D. Cal. 2018) (90-day deadline under Rule 4(m) applies to service on Doe Defendants, but may be extended upon a showing of good cause); *Scott v. Hern*, 216 F.3d 897, 911-912 (10th Cir. 2000) (affirming dismissal of action against Doe Defendants for failure to effect timely service under Rule 4(m)); *C.B. v. Moreno Valley Unified Sch. Dist.*, 2022 WL 2037504, at *5 (C.D. Cal. Mar. 17, 2022) ("The 90-day service deadline of Rule 4(m) applies to Doe defendants."); *Tabi v. Doe*, 2019 WL 5107102, at *6 (C.D. Cal. June 13, 2019), report and recommendation adopted *sub nom. Tabi v. Doe No. 1*, 2019 WL 4013444 (C.D. Cal. Aug. 26, 2019) (dismissing action against Doe Defendants without prejudice for failure to serve within Rule 4(m)'s 90-day deadline).

In cases where a court is required to screen a complaint before it may be served, it is generally accepted that the service deadline prescribed by Rule 4(m) does not begin to run until the date the court authorizes service of the complaint.  *See Robinson v. Clipse*, 602 F.3d 605, 609 (4th Cir. 2010) (Rule 4(m) limitation period is triggered by "the court's authorization of service of process" of a complaint filed by a plaintiff proceeding *in forma pauperis*); *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 459 (3d Cir. 1996) (tolling Rule 4(m)'s service period for all *in forma pauperis* plaintiffs until the court

16

authorizes service of operative complaint); *Goni v. Halloran*, 2008 WL 5111262, at *1 (S.D. Fla. Dec. 3, 2008) ("A suit filed by an individual who is proceeding *in forma pauperis* or a suit brought [by] a prisoner seeking redress against a government actor is not commenced upon filing of the complaint, but rather only after the district court satisfies itself that the plaintiff is indigent and that the claim is not frivolous.").  Here, the Court authorized service of the FAC on March 2, 2022.  (*See* Dkt. Nos. 37-39).  As such, the Rule 4(m) service deadline expired on May 31, 2022.

Because Borges, Jacobsson and John Doe No. 1 were not served by the May 31 deadline, any claims against them are subject to dismissal absent a showing of good cause for the failure to comply with Rule 4(m).  Accordingly, Plaintiff is ORDERED to file a declaration along with any amended complaint authorized by the District Judge that provides sufficient information to permit the USMS to serve Borges and Jacobsson, and to identify and serve John Doe No. 1, or, in the alternative, that shows good cause why the Rule 4(m) deadline should be continued.

# V.
## RECOMMENDATION

For the foregoing reasons, it is recommended that the Court issue an Order (1) accepting this Report and Recommendation; (2) granting Parker's Motion to Dismiss; and (3) granting Plaintiff thirty days to file a Second Amended Complaint.

DATED:  December 12, 2022

_____
PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

17